TEGART<br>
v.<br>
MCCALEB.

---

## M. OPPENHEIM & Co. *v.* M. LOOVIS et als.

*A fictitious partnership entered into by a debtor to cover his property, will not prevent a creditor from seizing and selling under execution the interest of such debtor in the stock of goods.*

APPEAL from the District Court of the Parish of East Baton Rouge, *Burke*, J. *Lacey*, for plaintiff and appellant:

Your honors will bear in mind that the question presented in this case comes before your honorable Court upon a motion to dissolve upon the face of the papers: consequently the fraud so strongly referred to in the argument before the Judge *a quo* cannot for a single moment enter into the mind of this Court, and your honors will and are bound to decide the matter upon the allegations of the petition. These allegations, each and every one of them, must for present purposes be considered as based upon truth. When the cause comes before your honors upon the merits it may be viewed in a different light, but there is no discretion as the case is now presented. It is alleged in the petition that *Michel Oppenheim* and *Henri Cerf* formed and entered into a copartnership for the purpose of trading and doing a dry-goods business in the town of Baton Rouge; that the goods, wares and merchandize and the other articles found in the store occupied by them, are the property of, and belonging to, the said copartnership of *M. Oppenheim & Co.* and do not belong to either of the partners individually; and further that *Martin Loovis*, under and by virtue of a *fi. fa.*, issued in a suit wherein said *Oppenheim* alone is defendant, has seized upon two-thirds of the entire stock of goods, wares and merchandize in the store of *M. Oppenheim & Co.*, and will proceed to sell the same unless enjoined.

It may not be amiss to state, *en passant*, that the validity of the copartnership, which is taken for granted upon a motion to dissolve upon the face of the papers, is also indirectly conceded by the defendant in injunction in the seizure which he has made; he seizes two-thirds interest in the goods, &c., the precise portion of *Oppenheim's* rights as fixed by the article of copartnership.

In this state of the case, nothing but one single isolated legal question is presented for the consideration of the Court, viz: could *Martin Loovis*, the individual creditor of one of the members of the firm of *M. Oppenheim & Co.*, seize and sell under a *fi. fa.*, issued against said *Oppenheim* any or all of the assets belonging to such copartnership, or the two-thirds or any interest of said *Oppenheim* in the partnership assets? Or must he await the liquidation of the partnership?

These questions have been so maturely considered and so pointedly answered, the former in the negative and the latter affirmatively, in the case of *Smith* v. *McMicken*, 3 An., p. 322, 323, that it would be worse than a work of supererogation to do more than to refer your honors to the decision in that case, and the authorities there quoted.

Judge Slidell, after a very careful and able examination, says: "from these principles, we think it fairly results that the individual creditor of a partner cannot seize a particular asset, the property of the partnership, nor even the so called interest of the partner in it (the parnership) under the pretext that his debtor has an undivided interest in it. He must await the liquidation of the partnership.

*F. G. & P. H. Morgan*, for defendants:

*Oppenheim & Cerf* sued out an injunction on the grounds: "that an individual creditor of said *Oppenheim* cannot seize under a *fi. fa.* issued against him any or all the assets belonging to the said copartnership, nor the two-thirds, nor any interest of said *Oppenheim* in the partnership assets; that the said *Loovis* and the sheriff aforesaid must await the liquidation of the partnership."

1. There is no error in the ruling of the Court, dissolving so much of the injunction as related to the discharge of the keeper or guardian appointed by the sheriff. 6 An. 548. 8 N. S., 662.

2. The levy having been made "on the two-thirds of the entire stock of goods, wares and merchandise in the store of the firm of *Oppenheim & Co.*, it being the interest of said *Oppenheim* in said firm," must be maintained.

The partnership property is liable to the creditors of the partnership, in preference to those of the individual partner; but the share of any partner may, in due course of law, be seized and sold to satisfy his individual creditors, subject to the debts of the partnership; but such seizure, if legal, operates as a dissolution of the partnership. L. C., 2794.

We contend that the levying of the writ of *fieri facias* dissolved the partnership, and if there were any creditors of the partnership, they could come in by way of third opposition, and claim that the proceeds of the sale be retained in the hands of the sheriff, to be distributed according to law. C. P., 395 *et seq.*

We will now return to the examination of our second proposition.

In *Cucullu* v. *Manzenal et al.*, 4 N. S., 183, the late Supreme Court held that partnership property may be attached in a suit against one of the members of a firm.

In the case of *Croft* v. *McKneely*, 1 L. R., 101 "Until a failure, or insolvency, the right to seize the undivided portion or interest in partnership property of one of the partners, cannot be doubted; and in the present case there is no evidence of pankruptcy."

Although this question did not arise directly in the case of *Priestly et al.* v. *Bisland et al.*, 9 R. R., 425, yet the same principle is at the foundation of the opinion of the Court. In that case one partner caused the interest of another to be seized and sold. The right to do this seems to be conceded—at least it is not contested, and the only consequence, say the Court, is, that, as the seizing partner must be presumed to know the state of the partnership affairs, he took the property subject to the privilege of creditors of the partnership.

In the case of the *Bank of Tennessee* v. *McKeage*, 11 R. R., 130, after citing the Art. 2794, and 11 L. R., 262, and 12 L. R., 370, the Court proceeds:

"From these well established principles, it results that the interest of a partner in a particular thing or piece of property, belonging to the firm cannot be seized or attached for his individual debt. An individual creditor cannot, under an execution or attachment, have the half or a third of a piece of goods or other article, belonging to a partnership, seized. He must have the whole share or interest of the indebted partner seized, and thus dissolve the partnership, and take the share after the payment of the partnership debts. There is a community of interest in the property as well as in the profits, and neither is separately liable to seizure. The interest of a partner in the firm is a distinct thing, and must be taken as a whole."

In *Nelson* v. *Conner et al.*, 3 A. R., 456, the Court say: "The interest of a partner in a commercial firm may be seized under execution (Civil Code, 2794) and the fact that the firm itself is liable for the debt, does not appear to us as debarring the creditor from such seizure."

And in the same case, on re-hearing:

"The interest of each partner in the joint concern, whatever it may be, must be made up of the assets of the partnership. Those assets, when not under a general course of administration for the benefit of all the creditors, may be seized by those who have judgments."

In the case of *John L. Harris* v. *the Bank of Mobile*, 5 A. R., 538, this Court, after pointing out what course might have been pursued under the 647th Art. of the Code of Practice, and 2457th Art. of the Civil Code, proceeds : "But they might also be seized in the same manner as the share in a private partnership under the Art. 2794 of the Civil Code, by seizing the interest of the partner in the assets, and notifying the firm."

In the case of *Thompson*, ex'r., v. *W. C. Mylne et al.*, 6 A. R., 80, we find the following language :

"In fact the creditor can only seize the partner's interest in the partnership. He cannot seize any particular thing belonging to the partnership, or acquire any rights upon it. Now, the interest of a partner is what belongs to him after a full settlement with his partners, according to the terms, spirit and intention of the contract of partnership and all agreements incidental to it."

But it was contended in the District Court, and probably will be here, the decision of this Court in the case of *Smith* v. *McMicken*, 3 A. R., 320, has overruled all the previous decisions. It becomes necessary, therefore, to examine that case, although several of the decisions we have quoted are subsequent to it. For the purpose of the present case, it will only be necessary to advert to the following portions of the decision in that case : "For the further consideration of this question, which, propounded in its simplest form, is, whether a creditor of a partner can seize a particular asset of the partnership, or even what he chooses to call the interest of his debtor, in *a particular asset*, it is necessary to consider briefly the nature of the contract of the partnership, and the consequent character of the partnership property, and the rights of its members."

"From these principles, we think it fairly results that the individual creditor of a partner cannot seize *a particular asset* of the property of the partnership, nor even the so-called interest of the partner *in it*. He must await the liquidation of the partnership, and in the meanwhile, lay hold of the residuary interest of the partner in the partnership generally, by levying a seizure in the hands of the partnership or the person charged with its liquidation and representing it."

We have italicised the words *particular asset*, because we consider that they afford a key to the whole case, and we admit without hesitation that a *particular asset* of a partnership cannot be levied upon and sold to pay the debt of an individual partner, but such, as we have already shown, is not our case.

On this subject we would also refer the Court to Story on Partnership, secs. 261, 262, 263 and 264.

BUCHANAN, J. On the 11th November, 1851, *Martin Loovis* instituted suit in the District Court of East Baton Rouge against *Michael Oppenheim*, a merchant, residing in that parish, claiming of him the sum of $1532 24, the amount of sundry notes past due and protested, and recovered judgment in said suit on the 26th January, 1852.

Pending the suit, to wit : on the 23d Dec, 1851, *Oppenheim*, the defendant, by public act before *Samuel Skolfield*, Recorder of the parish of East Baton Rouge, formed a partnership in business with *Henri Cerf*, in which contract, after premising that "the said *Oppenheim* did declare and say that, whereas, the said *Henri Cerf* has for three years past acted in a faithful and honest manner as his clerk, and whereas the said *Oppenheim* is truly indebted to the said *Cerf* for his wages for a portion of that time, and whereas the said *Henri Cerf* has promised and agreed, and by these presents does promise and bind himself to bring into the copartnership herein formed, his influence and good will, and stipulates that, if required by the said *Oppenheim*, he will act as the out-door partner simply and solely in peddling the dry-goods and merchandize which may belong to the copartnership," the contracting parties agreed upon the following terms and conditions :

1st. A partnership for buying and selling goods, wares and merchandize in the city of Baton Rouge, was formed, under the firm of *M. Oppenheim & Co.*

2d. The said partnership to endure for the term of three years from the date

Oppenheim
*v.*
Loovis.

of the contract, and the interest of the partners respectively to be one-third for *Cerf* and two-thirds for *Oppenheim.*

3d. The partnership to extend to and over all the goods, wares and merchandize of every kind, name and nature now in the store, kept by said *Oppenheim* and known by the name of the "Golden Bee Hive," and to the profits which may hereafter accrue or losses to be sustained.

4th. As soon as possible an account of stock to be taken, and *Cerf* will furnish his notes payable at one and two years to *Oppenheim* for the one-third of the original cost of the said stock.

On the 14th February, 1852, *Loovis* issued a *fieri facias* on his judgment against *Oppenheim*, and on the 16th of the same month the sheriff seized under that *fi. fa.* "two-thirds of the entire stock of goods, wares and merchandize in the store of *M. Oppenheim & Co.*, at the corner of Lafayette and Laurel streets, in the city of Baton Rouge, it being the entire interest of *Michael Oppenheim* in said stock of goods, wares and merchandize." Further proceedings under this seizure were enjoined by the plaintiffs herein, *Michael Oppenheim* and *Henri Cerf*, who allege in their petition that the seizure by a creditor of *Oppenheim*, individually, of two-thirds, or of any interest that said *Oppenheim* may have in the partnership assets of *Oppenheim & Co.* is contrary to law.

The perusal of the contract of partnership, in connection with the dates of the proceedings above referred to, makes it quite apparent that the whole partnership is a sham, a flimsy device to cover the property of *Oppenheim* from the pursuit of his creditors.

Judgment affirmed.