168 So.2d 347 (1964)
TECHE CONCRETE, INC., et al., Plaintiffs-Appellees,
v.
Velma Richard MOITY, Defendant-Appellant.
No. 1279.
Court of Appeal of Louisiana, Third Circuit.
October 27, 1964.
Rehearing Denied November 18, 1964.
Writ Refused January 18, 1965.
*349 Dugas, Bertrand & Smith, by Fred M. Smith, Lafayette, for defendant-appellant.
Armentor & Resweber, by A. J. Resweber, New Iberia, for plaintiff-appellee.
Allen J. Lacobie, Lafayette, for defendant-appellee.
Before TATE, FRUGÉ, and CULPEPPER, JJ.
TATE, Judge.
The plaintiff furnished certain materials to complete a warehouse building owned by the defendant, Mrs. Moity. The materials were furnished through the order of Cloa Industries, Inc., which held a lease from Mrs. Moity. However, recovery is sought from Mrs. Moity individually, as owner of the premises, on the ground that the lease from her to Cloa was "a sham and simulation designed to complete the aforedescribed building at a cost of approximately $8,000 without paying for any of the labor and material furnished in said completion." (Art. 13, original petition.)
The trial court gave judgment to the plaintiff in accordance with this demand. The defendant Mrs. Moity appeals to this court, urging that the lease was not a simulation but a bona fide transaction between the defendant and the Cloa corporation and that, as owner-lessor, she cannot be held individually liable for the substantial improvements to her building ordered by Cloa but not paid for by this corporate lessee. Fruge v. Muffoleto, 242 La. 569, 137 So.2d 336.
The defendant has also appealed from judgments against four other suppliers awarded on the same basis as the present, which were consolidated for trial and for appeal as the present, and in which the issues are substantially the same: LeBlanc v. Moity, La.App., 168 So.2d 355; Lalande v. Moity, La.App., 168 So.2d 355; Green v. Moity, La.App., 168 So.2d 356; and Zepherin v. Moity, La.App., ___ So.2d 356.
The trial court awarded judgment against Mrs. Moity individually for the materials purchased through Cloa, upon its holding that the lease between Mrs. Moity and Cloa was only a simulation. As a pretended act without reality, it could thus be disregarded as if never made. Thus Cloa, not being a real lessee, was only an interposed party through whom Mrs. Moity had the improvements built for her own account.
The trial court's finding was based upon evidence produced by the plaintiff-appellees only. Although the defendant-appellant Mrs. Moity participated through her counsel in the consolidated trials, the defendant then rested at the conclusion of the plaintiff's case. No testimony of Mrs. Moity, her husband, or the Cloa incorporators-officers was produced to explain or disprove any inference arising from the plaintiffs' evidence.
Very able counsel for Mrs. Moity, the defendant-appellant, contends that the trial court committed error in several respects. Counsel contends that there is no evidence whatsoever of collusion on the part of Mrs. Moity with Cloa, and that the appellee suppliers did not meet the heavy burden of proof required of those alleging fraud, that of exceptionally strong proof, stronger even than a preponderance of the evidence, Fitch v. Broussard, La.App. 3 Cir., 156 So.2d 127. It is also contended that the trial court improperly applied the lesser standard of proof applicable to simulations *350 (see below) because the present case concerns a lease and not a sale as in the simulation cases relied upon in the trial court judgment. Finally, it is suggested that, whatever connection there was between Mrs. Moity's husband and Cloa and the improvements made on Mrs. Moity's premises, there is no proof upon which the lease between Mrs. Moity and the corporation could be declared a simulation, since there is no evidence whatsoever to show that Mrs. Moity herself had any connection with Cloa, or that Mr. Moity acted with the knowledge and consent of his wife. Therefore, it is suggested, the defendant Mrs. Moity cannot be held responsible for any acts of Cloa and her husband which resulted in the improvement of her separate property.
In our opinion, the trial court properly applied to the present facts the law regarding simulations in holding the Cloa-Moity lease to be such, in accordance with the plaintiff's allegations.
Application of law of simulations to present facts.
"A simulation is a feigned, pretended act; one which assumes the appearance without the reality. Being entirely without effect, it is held not to have existed, and, for that reason, it may be disregarded or attacked collaterally by any interested person." Houghton et al. v. Houghton et al., 165 La. 1019, 1022-1023, 116 So. 493. See also: Koerkel v. Scallan, La.App. 3 Cir., 166 So.2d 370; Lemann, Some Aspects of Simulation in Louisiana and France, 25 Tul.L.Rev. 22 (1954); Comment, The Action in Declaration of a Simulation, 17 Tul.L.Rev. 459 (1943). As noted, "there can be as many different types of simulation as there can be contracts", 17 Tul.L.Rev. 458.
Not only have simulated sales and simulated mortgages been judicially disregarded as nullities as to one injured by the simulated act, as in the cases relied upon by the trial court; but also a simulated partnership (Oppenheim v. Loovis, 9 La.Ann. 261, 1854), or a simulated note and a simulated confession of judgment (see Koerkel case cited above), or a simulated judicial sale based upon a simulated judgment obtained when actually no debt was due (Dennistoun v. Nutt, 2 La.Ann. 483, 1847). We can find no basis for the appellant's argument that a simulated lease or a simulated corporation may not likewise be disregarded at the instance of one injured by the simulated act.
Also, while an action in declaration of a simulation attacks conduct which may be characterized as fraudulent, nevertheless the proof required of the party alleging the simulation is less demanding and less burdensome than that upon the party attempting to prove fraud. Howard v. Howard, La.App. 2 Cir., 96 So.2d 345. For, as the Supreme Court recently restated in Smith v. Smith, 239 La. 688, 119 So.2d 827, 831:
"This Court has recognized that simulation, because of its nature, can usually be proven only by indirect and circumstantial evidence * * * [Citations omitted.], so that, if one alleging a simulation produces evidence of circumstances which create highly reasonable doubts or suspicions as to the honesty of the transaction, a prima facie case is considered as having been made out, and the burden of proof is shifted to the defendant to show that a valid sale [contract] existed. * * [Citations omitted.]"
See also: Luquette v. Floyd, La.App. 3 Cir., 147 So.2d 894; Landry et al. v. Landry, La. App. 3 Cir., 140 So.2d 706; Broussard v. Broussard et al., La.App. 3 Cir., 132 So.2d 85, and cases therein cited.
We agree therefore with the trial court's conclusions as to the legal principles properly applicable under the allegations and the evidence of this case: "* * * if the plaintiffs have shown by their evidence circumstances which create highly reasonable *351 doubts or suspicion as to the genuineness of Mrs. Moity's lease with Cloa Industries, then the plaintiffs have made out a prima facie case and the burden was shifted to Mrs. Moity to show that a valid lease existed. As Mrs. Moity did not make any showing then it is only necessary to make the determination of whether or not the plaintiffs have succeeded in showing circumstances which create highly reasonable doubts or suspicion as to the genuineness of her transaction with Cloa Industries. If the evidence makes this showing then we must find for the plaintiffs as it has not been rebutted."
The facts.
In December of 1960, the defendant Mrs. Moity through her husband had constructed the walls and roof of a large warehouse on land she owned near New Iberia.
After this preliminary work was completed, Mrs. Moity, joined and authorized by her husband, then executed a 10-year lease of this building to Cloa Industries, Inc. The lease specifically provided that "Lessor" (Mrs. Moity and her husband) were not to be liable for any repairs or improvements made on the property, and it also specifically provided that improvements made by the lessees were to belong to the Lessor at the termination of the lease. Another provision of the lease was that the lessee was to be "immediately expelled from property for non-payment of rent or lease on the date due in advance".
The Cloa corporation came into existence on January 6, 1961, and the lease with Mrs. Moity and her husband was executed some ten days later.
The Cloa corporation through one or the other of its three incorporators then proceeded to complete the Moity warehouse at a cost of approximately eleven thousand dollars. Flooring was supplied, interior offices were constructed and finished with airconditioning, and a large amount of shell was used to construct a parking area around the building. A large amount of glazed brick was ordered and delivered to the premises. All this was done by ordering various items of the construction separately from different suppliers, usually on a rush basis, between January and April 1961, allegedly in order to permit the corporation to commence its business-to-be of furnishing oil field supplies and chemicals.
The corporation never paid one cent to any of these suppliers of material or labor.
The last work was done on April 15th. On May 8th, Mrs. Moity filed suit to cancel the lease for non-payment of the March and April rent. No defense or appearance was made by the alleged corporation. Although no default or judgment was taken, nor was the writ of sequestration ever executed, Mrs. Moity and her husband immediately went back into possession of the nearly-finished premises as if a lease had never been executed, for instance removing to their home the glazed bricks which had been delivered to the warehouse at the order of the alleged corporation.
Evidence was also introduced that at the same time a similar course of conduct had resulted in Mrs. Moity's having four unfinished houses on her property in Lafayette completed at a cost of some fourteen thousand dollars. Cloa had leased these structures from Mrs. Moity on the same date as it executed the New Iberia lease, and it had then ordered some fourteen thousand dollars worth of labor and materials to complete and finish the houses. Immediately following their completion, Mrs. Moity filed suit to cancel the alleged lease on the ground of non-payment of rent. No judgment was secured cancelling the lease, but about a year later Mrs. Moity proceeded to sell the now-completed residences for a total of over thirty thousand dollars.
Again, not one cent had been paid by Cloa for the labor or materials used to complete Mrs. Moity's houses.
Cloa Industries, Inc., had been incorporated in Lafayette Parish on January 6, *352 1961. The incorporators were two married women and the son of one of them. At the time of suit, about a year later, the latter had been inducted into the military service. The address of the corporation and of all of these incorporators was listed as at a Holly Street property in Lafayette owned by Mrs. Moity, which was one of the uncompleted houses immediately thereafter leased by her to the alleged corporation. The articles of incorporation showed that its paid-in capital was one thousand dollars (with an authorized capital through any subsequent issuance of shares of five thousand dollars).
To recapitulate: This corporation, with a paid-in capital of one thousand dollars and with offices on Moity property, proceeded ten days after it was formed to lease the Moity warehouse property in New Iberia and the Moity lots with four uncompleted residences in Lafayette. The leases specifically contemplated the corporation completing the warehouse and the four residences without liability to the Moity lessors, and with the improvements to belong to the Moity lessors when the lease terminated; the lease also provided for automatic termination of the lease upon non-payment of rent. The corporation immediately ordered some twenty-five thousand dollars of repairs and substantially completed the buildings and then, as soon as this was done, become defunct. Tho Moitys took possession of the premises upon the basis that the rent had (allegedly) not been paid after the first month. Thus, the apparent sole result of the incorporation and the leasing was to complete the uncompleted construction work on Mrs. Moity's premises and then to go out of business, without paying a single supplier or doing a day's other business than this construction work on Mrs. Moity's behalf.
Summary and conclusion.
Counsel for Mrs. Moity contends that the plaintiff has burden of proving its case of simulation. It is argued that the above facts do not preponderantly prove any simulation, but that they simply show a bona fide lease transaction between Mrs. Moity as lessor and a bona fide corporation as lessee. Although unfortunately the corporation became defunct after a month or so and was unable to pay for the twenty-five thousand dollars of improvements to Mrs. Moity's property, it is suggested that this is just an instance of a poor business deal on the part of the corporation which through happenstance has resulted in Mrs. Moity's great good fortune in receiving twenty-five thousand dollars worth of improvements without any personal liability therefor (since the owner is not personally liable for improvements made by her lessee, nor is she even regarded as being unjustly enriched, according to our Supreme Court's holding in Fruge v. Muffoleto, cited above).
We respectfully disagree. While the result shown may not be impossible as flowing from a bona fide series of unfortunate events, it is certainly most improbable that, without collusion for the purpose of benefiting Mrs. Moity, a corporation was formed and made the improvements and then became defunct, all within the space of a month or so, with the sole result if not the sole purpose of the incorporation and the lease being to enrich Mrs. Moity without personal liability on her part. Even under Mrs. Moity's construction of the evidence, this corporation had only one thousand dollars of paid-in-capitalyet it proceeded to order twenty-five thousand dollars worth of building materials and labor to complete Mrs. Moity's unfinished buildings, which it could not hope to pay for, since it was unable to pay the rent due for the property even before the buildings were finished and ready for occupancy, causing Mrs. Moity to cancel the lease and take back the premises as soon as the construction work on them was finished.
We think that substantial evidence was produced which creates highly reasonable doubts or suspicions as to the honesty and reality of the alleged transactions between the Cloa corporation and the Moitys. Especially is this so when, in addition to the *353 above improbable circumstances, we take into consideration other indicia of collusion or of the work being done primarily for Mrs. Moity rather than Cloa: such as the continuing interest of Mrs. Moity through her husband in the completion of the improvements on the leased premises, including Mr. Moity's request that alleged defects in the work be corrected; and such as Mr. Moity's assurance to suppliers who requested such information that Cloa was still paying the rent at a time when, even by the self-serving allegations of Mrs. Moity's unpursued cancellation suit against Cloa, rent was even then in arrears, shortly after the lease had been executed.
As earlier stated, under such a showing of suspicious circumstances, a prima facie case of simulation has been made out, and the burden shifts to the defendant to prove the reality of the presumptively simulated transactions.
Since in the present case the defendant saw fit to introduce no evidence at all to explain the suspicious circumstances, the trial court properly held that the lease transaction was a simulation through which Mrs. Moity secured through the corporation the substantial improvement of her premises. The corporation is regarded as lending its name to Mrs. Moity for a fraudulent purpose, in which function the acts of the corporation in front of the mask of the simulation are considered to be also those of Mrs. Moity behind the mask, she being an undisclosed principal acting through the corporation as her prête-nom[1]; and she is therefore liable individually for the repairs and improvements on the same bases that the corporation is. See Planiol, Civil Law Treatise (LSLI Translation, 1959), Volume 2, Sections 1189, 1198, 2271, 2272. See also: Grimaldi & Co. v. Sbisa, 10 Orl. App. 176 (1913); Comment, Juridical Basis of Principal-Third Party Liability in Louisiana Undisclosed Agency Cases, 8 La.L. Rev. 409 (1948). Cf.: Williams v. Winchester, 7 Mart. (N.S.) 22 (1828); Childers v. Police Jury, 2 Cir., 9 La.App. 490, 121 So. 248 (1928); Valmont Service Station v. Avegno, Orl., 3 La.App. 335 (1925); 3 C.J.S. "Agency" § 244, p. 170.
We affirm the trial court's holding in these respects.
Miscellaneous contentions.
1. The defendant-appellant suggests that she, Mrs. Moity, cannot be charged with any collusion possibly shown between her husband and Cloa, since there is not a scintilla of evidence directly connecting her with the transactions. We shall simply state that the record reflects that Mr. Moity acted for his wife in connection with the commencement of improvements on her property before the lease, that his interest in the progress of the completion of improvements after the lease can only be construed as being in his wife's interest, and that we think the trial court properly held that, under the evidence, Mrs. Moity should be charged with having known and consented to her husband's acts in connection with the warehouse-premise improvements, which actually were made within sight of the Moity home.
2. In fairness, before concluding, we should note an additional circumstance that gave us pause.
When a consideration has been paid, no matter how inadequate, then the transaction cannot be said to be simulated and without reality. Eureka Homestead Society v. Baccich, 190 La. 494, 182 So. 653; Citizens' Bank and Trust Co. v. Willis, 183 La. 127, 162 So. 822; 29 Tul.L.Rev. 44-45; 17 Tul.L.Rev. 463. In the present instance, the plaintiffs introduced copies of the Iberia and Lafayette Parish suits by Mrs. Moity against Cloa to cancel the alleged lease for non-payment of rent. Each of these suits alleges that the only rent paid was in January when the lease was executed and in *354 February for the next month; but that no further rentals had been paid upon the leases. However, if indeed some of the rent was actually paid by a bona fide corporation, the argument could be made that the action in declaration of a simulation does not lie because some consideration was paid for the lease.
Nevertheless, we have concluded that these allegations in the suit by Mrs. Moity against Cloa do not prove, as against the plaintiffs-appellees, that any rent was actually paid by Cloa to Mrs. Moity. For one thing, the plaintiffs-appellees were not parties to the suit, and the self-serving declarations of the parties to a simulation, of necessity and by definition, do not by themselves amount to proof of the facts declared. The very purpose of actions in declaration of a simulation is to pierce through self-serving acts and statements of the parties to the simulation, in order to prove a sham what these parties have attempted, by their pretended acts and declarations, to set up as a real and bona fide transaction.
Further, the prima facie simulation resulting from the highly improbable and suspicious circumstances shown by the present evidence, includes within its scope that the corporation itself may be simulated and actually an alter ego of the Moitys. In part, the lease was not a bona fide lease because it was not to a genuine third party, but instead to an alleged corporation which, under the evidence, must be presumed to have acted for and on behalf of Mrs. Moity. Even if any sums of money might have been "transferred" from the corporation to Mrs. Moity in payment of rentals due under the alleged lease, such "payment" might have amounted to no more than the transfer of funds from one pocket to another of the same person, for the alleged corporation was (under the totality of the evidence creating a prima facie case of simulation) only an alter ego or agent of Mrs. Moity.
If Mrs. Moity had introduced proof of a bona fide payment of rent by Cloa to herselfand if the plaintiffs-appellees did not then prove that the alleged corporation funds were in reality those of the Moitys, then under the jurisprudence most probably the transaction could not have been characterized as a simulation; for some bona fide consideration was paid. Although perhaps Mrs. Moity could have dispelled the presumption of simulation by such proof, she did not choose to do so.
There being no proof that any consideration was actually paid to Mrs. Moity for the alleged lease, the prima facie case of simulation made out by the totality of the evidence is not rebutted by the circumstance that one of the transactions between the parties, not verified by evidence in this record, amounted to an ex parte allegation by Mrs. Moity that she had been paid some rent as consideration.
3. Finally, the defendant alleges that the trial court allowed a double recovery by giving judgment to Teche Concrete, the present plaintiff, for the materials delivered by it to the warehouse premises, and by also including an amount for the same materials within the judgment granted to the plaintiff Zepherin in a companion suit 168 So.2d 356. Zepherin had ordered these materials to be used by him in completing the improvements on the premises. Zepherin had a written contract with Cloa to make certain improvements, which contract was recorded. No bond to protect materialmen was required.
Teche Concrete, by timely inscription and timely suit, secured the right to a personal judgment against the owner of the premises under LSA-R.S. 9:4806, applicable in instances such as the present where a written contract with the owner to make improvements is recorded without bond. Since Teche Concrete delivered materials used to fulfill the contract, the judgment in its favor was therefore correctly rendered, for the defendant owner (through Cloa as a nominal interposed party) had contracted for the improvement on her property in which the material was used.
*355 As earlier stated, Zepherin, the plaintiff in the companion suit, had contracted with Cloa to make the improvements in question, and he had ordered the material from Teche Concrete. He was likewise correctly awarded judgment for the contract price on the basis of Mrs. Moity's direct liability to him through Cloa as a nominal interposed party. In Zepherin's judgment, however, the trial court specifically provided that any payment to Teche Concrete should amount to a credit on amounts due to Zepherin and should discharge the obligation to that extent. We fail to find that the defendant-appellant was prejudiced by this award to Zepherin, or that double recovery was allowed against her by it.
Decree.
For the foregoing reasons, the judgment of the trial court in favor of the plaintiff is affirmed, at the cost of the defendant-appellant.
Affirmed.

On Application for Rehearing.
En Banc. Rehearing denied.
NOTES
[1] A prête-nom is one who lends his name for the use of another. Peterson v. Moresi, 191 La. 932, 186 So. 737, 739.