350 So.2d 1292 (1977)
ABBEVILLE LUMBER COMPANY, Plaintiff-Appellee,
v.
Lester James RICHARD et al., Defendants-Appellants.
No. 6144.
Court of Appeal of Louisiana, Third Circuit.
October 17, 1977.
*1294 Deshotels & Deshotels, O. H. Deshotels, III, Kaplan, for defendants-appellants.
Cooper & Sonnier by John E. Ortego, Abbeville, for plaintiff-appellee.
Before HOOD, CULPEPPER and GUIDRY, JJ.
GUIDRY, Judge.
This is a suit on an open account in which plaintiff seeks judgment against defendants, Sidney Richard and Lester James Richard, and recognition of a materialman's lien on property owned by Sidney Richard. Lester Richard filed answer admitting that certain materials were furnished to him but *1295 denied any indebtedness to plaintiff. Sidney Richard answered denying his indebtedness to plaintiff and reconvened seeking damages from plaintiff for wrongful filing of the lien. After trial on the merits, judgment was rendered in favor of plaintiff against both defendants holding them to be solidarily liable to plaintiff in the amount of $2,787.65 plus interest and attorney's fees. The judgment recognized plaintiff's lien as valid and dismissed the reconventional demand. Sidney Richard appealed. Lester Richard has not appealed and the judgment against him is now final.
The issue presented is whether Sidney Richard is personally liable to the plaintiff and whether the latter has a valid lien on the Sidney Richard property which secures the payment of the claimed indebtedness.[1]
The facts giving rise to this litigation are not seriously disputed and may be summarized as follows.
Sidney Richard, a retired farmer, is the sole owner of a tract of land in Vermilion Parish containing approximately 80 acres. He resides on the property with his wife and son, Lester James Richard. At some time prior to June, 1975, Lester decided to open a horse racing track to be known as "Acadiana Downs". He secured estimates of the approximate cost of the endeavor and then approached his father concerning the financing of the project. It was agreed that Sidney would loan Lester the money needed, and would lease him a portion of his property on which the race track was to be constructed. On June 6, 1975, Mr. and Mrs. Richard executed a note and mortgage in the amount of $35,000.00 in favor of the Vermilion Bank & Trust Company. The proceeds of the loan were distributed by paying off a prior debt, in the amount of $15,000.00, that Lester owed the bank for past farming losses with the remainder $20,000.00, being loaned Lester for the construction of the race track. The latter sum was deposited to an account in Lester's name.
On June 25, 1975, a written lease was executed, affecting approximately 60 acres of land, between Sidney Richard and his wife, as lessors, and Lester James Richard, as lessee, which was duly recorded on June 27, 1975. The lease provided for a primary term of 25 years and for monthly rental payments to be made by the lessee in the amount of $300.00. The lease also contained the following pertinent provisions:
"Should this lease be cancelled by either party after the primary term hereof, LESSEE shall have six (6) months thereafter to remove any and all improvements thereon. It is hereby recognized that there are no improvements located on this property at the present time.
It is stipulated that the property is to be used for a bar and/or tavern together with a race track and LESSEE may erect such improvements as are necessary for same . . ."
Though executed on June 25, 1975, the lease was made retroactive to June 1, 1975.
Sidney's residence is adjacent to the leased property and it is undisputed that he performed various tasks for his son to aid in the construction of the race track. He plowed and leveled the land with his tractor and helped Lester measure and extend the track when it was determined that this was necessary. On one occasion, he assisted a vehicle that had become stuck at the construction site. Sidney signed one invoice for materials delivered by plaintiff. When Lester was in the hospital, Sidney purchased several licenses which would be necessary for the operation of the race track with money furnished by Lester. It is undisputed that Sidney never received any remuneration for the services he performed. It is also undisputed that no rental payments *1296 were ever actually made. Instead, Lester executed promissory notes payable to Sidney every three or four months for the past due rent.
Some months following execution and recordation of the lease, plaintiff extended credit to Lester through an "open account" which had been opened on the basis of a recommendation from an acquaintance of the Richard family. A series of purchases were made on the account during January and February of 1976 which were not paid when due. In February, 1976, plaintiff filed a materialman's lien on the property owned by Sidney Richard. On March 8, 1976, plaintiff filed the instant suit.
In his written reasons for judgment the trial judge, in finding Sidney Richard solidarily liable with Lester and in recognizing plaintiff's lien as valid, stated:
"The court must now determine whether or not the involvement of Sidney Richard was sufficient to justify including him in the judgment and maintaining plaintiff's lien rights against his property . . .
Both Sidney and Lester maintain that there was never any agreement between them to share the profits of the racing operation. Sidney denies any other motive for his generosity than merely a desire to help his son earn a living by operating the track. Regardless of his motives, the facts indicate that a substantial business operation was underway which was financed entirely by Sidney Richard.
In addition, substantial improvements were erected on Sidney's property which will eventually enure to his benefit according to the lease. Finally, the court feels that the lease itself was contracted under circumstances which indicate that its sole purpose was to shield Sidney and his property from further liability. As a result, the court finds that the work was done with the knowledge and consent of the owner so that LSA-R.S. 9:4801 applies and plaintiff is entitled to have its lien rights recognized against the property of Sidney Richard. See Teche Concrete, Inc. v. Moity, 168 So.2d 347 (La. App. 3rd Cir. 1965). Although the intention of the Richards may not have been fraudulent, the lease was certainly confected to limit Sidney's liability to the amount he actually loaned Lester to construct the track. The fact that the lease was made retroactive to June 1, the fact that Lester never paid any rent money, and the circumstances surrounding the project itself, all point to the conclusion that the lease was a simulated transaction which the creditors are entitled to attack if it is done to their injury."
We find these conclusions to be manifestly erroneous and reverse.

PRIVATE WORKS ACT
Although, plaintiff in its petition alleges that Sidney Richard contracted with it for the sale and delivery of certain building materials there is no evidence in the record to support this allegation. To the contrary, the record clearly reflects that Sidney Richard had no personal contact and conducted no negotiations of any kind with plaintiff's officers or employees. All negotiations were between Lester Richard and plaintiff and all materials delivered were billed to Lester Richard and/or "Acadiana Downs". In seeking to hold Sidney Richard personally responsible for the debt sued upon and in seeking to uphold the validity of its recorded lien plaintiff relies on the provisions of LSA-R.S. 9:4801 et seq.
LSA-R.S. 9:4801 et seq., provides a procedure whereby certain enumerated persons who have performed work or furnished material for the erection, construction, repair, or improvement of immovable property with the consent or at the request of the owner may assert liens against the property. Plaintiff contends that it is entitled to have its lien recognized against Sidney Richard's property under R.S. 9:4801, claiming that the materials were furnished to the construction project on his property at his request or with his consent. Since no contract or bond was recorded plaintiff contends that it is entitled to a judgment against Sidney Richard declaring him to be personally liable. LSA-R.S. 9:4812.
*1297 Sidney Richard, on the other hand, contends that he is not personally liable to plaintiff and that its lien rights, if any, should attach only to the rights that Lester has under the lease. LSA-R.S. 9:4811 provides in pertinent part as follows:
"Where any work as hereinabove set forth is done or buildings or other improvements made, where the person for whom the work is done or with whom the contract is made, or by whom the work is done, is not the owner of the land upon which the work is located, then he shall be subject to all the obligations that are made incumbent on the owner, and the privileges shall operate upon whatever right the said person having the work done or doing the work may have to the use of the land as lessee. The privilege shall operate against the lease such person holds, if there is one, . . ." (emphasis added)
In the leading case of Fruge v. Muffoletto, 242 La. 569, 137 So.2d 336 (La. 1962), our Supreme Court was faced with the following factual situation:
"By agreement both written and oral between the owner-lessor (defendant herein) and this tenant, the latter was authorized to undertake at his own expense the needed reconstruction to make the premises suitable for the purpose for which leased. The owner had personal knowledge that the reconstruction project was being undertaken and was personally present during the course of the reconstruction, and he had accompanied the tenant to the plaintiff-contractor's office when the plaintiff furnished the tenant an estimate of the cost of the repairs; but the owner did not enter into any of the negotiations between the tenant and the contractor, nor did he indicate any personal responsibility for the cost of the repairs (nor, in fact, did he even know the estimated cost of the repairs) . . ."
In the course of answering questions certified by this circuit based upon the above factual set-up the Court stated as follows:
"We therefore hold that mere consent or acquiescence of the owner to work being done on leased premises by the lessee or as a result of a contract awarded by the lessee is not sufficient to render the land and improvements subject to the privilege for material, labor, and similar services imposed by R.S. 9:4801; nor does the owner's knowledge of improvements on the premises make the employer his, the owner's agent, so as to impose liability on the owner for wages, materials or claims of the employer's workmen. This is not to say, however, that the owner, through his conduct, may not under certain circumstances create an estoppel which will prevent his contesting the rights of the materialman, laborer, or similar claimant."
We find that the instant case fits squarely within the rule of law expressed above. The recorded lease between Lester and Sidney Richard served as notice that Lester was merely a lessee, and not the owner of the premises on which the race track was to be constructed. The materials were ordered by the lessee and were incorporated into a structure located on the leased premises. Accordingly, we determine that absent the Richard lease being declared a simulation or Sidney Richard being decreed estopped to contest the lien rights asserted by plaintiff the latter's lien rights must be held to attach only to Lester's interest in the lease, and not to the property itself.

SIMULATION
The trial judge, in his written reasons for judgment, found the lease between Sidney and Lester Richard to be a simulated transaction, citing Teche Concrete, Inc. v. Moity, 168 So.2d 347 (La.App. 3rd Cir. 1965). Accordingly, the trial court held LSA-R.S. 9:4801 applicable and LSA-R.S. 9:4811 inapplicable.
We agree that LSA-R.S. 9:4811 does not and should not protect parties to a simulated lease. Williams v. Smith, 340 So.2d 401 (La.App. 2nd Cir. 1976) and cases therein cited. However, we disagree with the trial court's conclusion that the lease in question is a simulated lease.
*1298 The Teche Concrete case, supra, which was apparently relied on by the trial judge, is inapplicable to the case at bar because of numerous distinguishing characteristics. In that case, unlike the instant case, the lease provided for immediate termination for non-payment of the rent and that any improvements made on the premises at termination would belong to the lessor. We also note that the lessors in that case took possession of the property immediately after suit was filed to cancel the lease. Defendant has never sought cancellation of the lease nor has he attempted to exercise any dominion over the improvements constructed on the leased premises.
When attacking a transaction as being simulated, plaintiff may introduce evidence tending to show the suspicious and doubtful character of the transaction. Once this has been done, the burden then shifts to the defendant to rebut plaintiff's inferences that the transaction is simulated. In Ingram v. Freeman, 326 So.2d 565 (La. App. 3rd Cir. 1976, writ denied), this court said:
"The second basis for a presumption of simulation arises when the party asserting the simulation produces evidence which creates a highly reasonable doubt or suspicion concerning the honesty or validity of the transaction. Such a showing establishes a prima facie case of simulation and the burden is thereby shifted to the defendants to demonstrate the validity of the transaction under attack." (citations omitted)
We find it significant that in Teche Concrete, supra, the defendant did not attempt to rebut the inference created by the plaintiff's evidence.
In the instant case, the trial judge apparently reached his conclusion that the lease was a simulated transaction because of the following circumstances:
(1) The lease was made retroactive to June 1, 1975.
(2) The lessee never paid any of the rent.
(3) The improvements will enure to the benefit of the lessor.
(4) The lessor assisted the lessee in improving the leased premises.
(5) The sole purpose of the lease was to shield the lessor and his property from further liability.
We deem it appropriate to briefly discuss each of the above.
Unlike the trial court, we attach no significance to the fact that the lease when executed was made retroactive to June 1, 1975. The record indicates that lease negotiations between Sidney and Lester Richard were in progress prior to June 1, 1975. Presumably, the parties did not wish to execute and record the lease prior to confection of the loan with the Vermilion Bank & Trust Company which was finalized on June 6, 1975. It is not unusual for a written lease when executed to be made retroactively effective to a date which coincides with the commencement of lease negotiations. In any event, the lease in question was a matter of public record long before plaintiff extended credit to Lester Richard. We cannot appreciate how the fact that the parties chose to make the lease retroactive to June 1, 1975 operated to plaintiff's detriment or served to cast any doubt or suspicion on the validity of the lease.
It is not disputed that Lester never made any rent payments to his father under the terms of the lease. While the non-payment of rent under certain circumstances may give rise to a presumption of simulation, we do not feel that this is the situation presented here. The record clearly establishes that Lester Richard had no funds with which to make the rental payments and that Sidney anticipated that rental payments would be made after Lester began his race track operation. In this latter connection we note, as did the trial judge, that Lester executed a series of promissory notes to his father for the past due rent payments. It is settled law that when any consideration, no matter how inadequate, has been paid, the transaction is not a simulation. Smith v. Richardson, 200 So.2d 897 (La.App. 2nd Cir. 1967); Mut v. Mut, 222 So.2d 100 (La.App. 1st Cir. 1969); Russell v. Culpepper, 337 So.2d 226 (La.App. *1299 3rd Cir. 1976, writ granted La., 340 So.2d 314, 315, December 8, 1976).
In his reasons for judgment, the trial court noted that the improvements erected by the lessee will eventually enure to the benefit of the lessor. We do not find that this is necessarily so. Referring to pertinent provisions of the lease, supra, we observe that if the lease is cancelled after expiration of the primary term the lessee is allowed a period of six months within which to remove all improvements. The lease being silent as to the lessee's right to remove improvements during the term of the lease the situation would be governed by R.C.C. Article 2726 which allows a lessee to remove improvements made by him provided he leaves the thing in the state it was in when he received it. As previously indicated Sidney Richard has never sought cancellation of the lease and presumably same is still in force and effect with all attendant rights, including the right of the lessee to remove the improvements upon lease cancellation.
It is undisputed that Sidney did help his son by performing various services before and during the construction of the race track. We do not find it unusual that a father would advise and assist his son in such matters. Sidney was retired and lived right next to the construction site. He helped his son "just to pass the time". Also, we do not think that it is unusual for a father to loan his son a sum of money to help establish him in a business. We do not believe that this creates any suspicion or doubt concerning the validity of the transaction.
Even if the evidence does create a suspicion or doubt we conclude that Sidney Richard successfully carried the burden of proof imposed upon him. Accordingly, we are of the opinion that the trial judge committed manifest error in finding the lease to be a simulation.

ESTOPPEL
In Fruge v. Muffoletto, supra, the Supreme Court recognized that under certain circumstances, a lessor of property could conduct himself in such a manner as to find himself estopped from contesting the rights of a materialman or other lien claimant. In American Bank and Trust Company v. Trinity Universal Insurance Company, 251 La. 445, 205 So.2d 35 (La.1967), our Supreme Court stated:
"Equitable estoppel may be defined as the effect of the voluntary conduct of a party whereby he is precluded from asserting rights against another who has justifiably relied upon such conduct and changed his position so that he will suffer injury if the former is allowed to repudiate the conduct. Founded upon good faith, the doctrine is designed to prevent injustice by barring a party, under special circumstances, from taking a position contrary to his prior acts, admissions, representations, or silence." (citations omitted)
There are three elements necessary for an estoppel: (1) a representation by conduct or word; (2) justifiable reliance; and (3) a change in position to one's detriment because of the reliance. Wilkinson v. Wilkinson, 323 So.2d 120 (La.1975). We find that all three elements are lacking in the instant case. The record indicates that Sidney never personally contracted for the purchase of any materials from plaintiff. He signed one delivery slip only because there was no one else around to sign when the materials were delivered. Furthermore, the record is devoid of any evidence that plaintiff relied on any conduct of Sidney Richard in extending credit for the materials delivered.
When Lester opened his account with plaintiff, he was introduced to the yard manager by a Mr. Pat Thompson. According to the testimony of plaintiff's yard manager, Mr. Thompson stated that the Richard family had been customers of his for years and he felt that it would be all right to let Lester have whatever he would need. On cross examination, Mr. Frederick, the yard manager, candidly admitted that he was only opening an account for Lester Richard. It was not understood at the time *1300 that Sidney Richard was to be indebted for the materials purchased.
We find that Sidney Richard was not in any way connected with the purchase of the materials furnished by plaintiff. The account was opened in the name of Lester Richard and he was the person who had dealings with Abbeville Lumber Company. We are unable to find any evidence in the record showing that plaintiff relied on any representations of Sidney Richard or that it suffered any detrimental change in position because of Sidney's conduct.
The case of Henderson v. Rossi, 185 So.2d 92 (La.App. 4th Cir. 1966), presented issues similar to the case at bar. In that case, a lessee hired plaintiff to perform work on the leased premises with the knowledge and consent of the lessor. The lessor even provided some of the materials used by the plaintiff. As plaintiff was unable to locate the tenant, he filed a lien and brought suit against the lessor. The court held that the lessor was not estopped to deny liability. Plaintiff had been hired by the lessee and the lessor had done nothing to cause plaintiff to believe that he was doing the work for the lessor or for his benefit.
Estoppels are not favored in law because they bar the normal assertion of rights. Wilkinson v. Wilkinson, supra; American Bank and Trust Company v. Trinity Universal Insurance Company, supra.

JOINT VENTURE
In its petition, plaintiff asserts that Lester and Sidney Richard were engaged in a "joint adventure" to build and operate the race track. We find no merit in this contention as the necessary elements for a joint adventure are not present in the instant case. In Westenberger v. State, Department of Education, 333 So.2d 264 (La. App. 1st Cir. 1976), the court stated:
"A joint venture is a special combination of two or more persons who engage in a specific venture for their joint profit or gain, without an actual partnership or corporate designation. . . .
Moreover, to constitute a joint venture, each party must have equal right to direct and govern the conduct of the other involved, as well as some voice in the control and management of the business undertaking which is the subject of the parties' relationship." (citations omitted).
In the instant case, the record does not reflect any agreement between Lester and Sidney to share in the profits and losses of the race track, nor does it show that Sidney exercised any degree of control over the project.

UNJUST ENRICHMENT
Finally, plaintiff in its brief suggests in the alternative that it is entitled to recovery against Sidney Richard under the theory of unjust enrichment.
Recovery under the theory of unjust enrichment was recognized by our Supreme Court in the case of Minyard v. Curtis Products, Inc., 251 La. 624, 205 So.2d 422 (La.1967). Five requirements were recognized as necessary for the doctrine to be applicable: (1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and impoverishment; (4) absence of justification for the enrichment and impoverishment; and, (5) absence of a remedy provided by law. Considering the elements formally set forth in Minyard, supra, we conclude that several of the conditions for application of the doctrine are not present in the instant case.
It has not been shown that there is an enrichment to the lessor in that the lease specifically provides that any improvements remain the property of the lessee and may be removed by him at the termination of the lease.[2]
*1301 Even assuming that an enrichment can be shown in the instant case, we note that there is a legal cause which justifies such enrichment, i. e., the contract of lease and LSA-R.S. 9:4811. In addition, the further condition specified in Minyard, supra, that plaintiff show an absence of another legal remedy is lacking in that plaintiff clearly has a remedy against the lessee and the buildings constructed on the premises which admittedly belong to him. In this latter connection, we again note that the lessee remains the owner of these buildings and retains the right to remove them upon termination of the lease. We again observe there is no evidence in the record to indicate that the lease has ever been cancelled or that the lessor has taken possession of the buildings.[3]

DEFENDANT'S RECONVENTIONAL DEMAND
As previously indicated, Sidney Richard seeks a judgment in reconvention for damages he allegedly sustained as a result of the filing by plaintiff of a lien against his property. The trial court properly disallowed this reconventional demand. It is well settled that damages are not allowed for the wrongful filing of a lien unless the person causing the inscription of the lien is found to have acted in bad faith or with malice. Patterson v. Lumberman's Supply Company, Inc., 167 So. 471 (La.App. 2nd Cir. 1936); Loeb v. Johnson, 142 So.2d 518 (La.App. 1st Cir. 1962); Dickson v. Moran, 344 So.2d 102 (La.App. 2nd Cir. 1977).
Plaintiff-in-reconvention introduced no evidence to establish bad faith or malice on the part of Abbeville Lumber Company. To the contrary the record supports a finding that defendant-in-reconvention acted in good faith and upon the advice of counsel.
For the above and foregoing reasons the judgment of the trial court insofar as it awards judgment against Sidney Richard and casts him for costs and insofar as it recognizes the materialman's lien filed by plaintiff against the property of Sidney Richard as being valid and subsisting is reversed and set aside. Accordingly, it is ordered, adjudged and decreed that plaintiff's demand against Sidney Richard is dismissed with prejudice. It is further ordered that the materialman's lien filed by plaintiff, recorded in Mortgage Book 376, Folio 507, Entry No. 273707 records of Vermilion Parish, Louisiana, insofar as it purports to bear upon and effect the following described property:
The Northwest quarter of the Southwest quarter; The North half of the Southwest Quarter of the Southwest Quarter of Section 11, Township 13 South, Range 2 East, Vermilion Parish, Louisiana.
is ordered cancelled and erased from the records of Vermilion Parish, Louisiana.
The judgment of the trial court insofar as it dismisses the reconventional demand filed by Sidney Richard is affirmed. All costs of this appeal are assessed to plaintiff-appellee, Abbeville Lumber Company.
AFFIRMED IN PART, REVERSED IN PART AND RENDERED.
NOTES
[1] At trial, defendants filed an exception of nonjoinder of an indispensable party, i. e., the "joint venture" between Sidney Richard and Lester James Richard. We find no merit in appellant's suggestion that the district court erred in failing to sustain the exception. For the reasons set forth in the body of this opinion, we find that no joint venture existed and, in any event, we note that both of the parties to this alleged joint venture were properly before the court as defendants to this action.
[2] Though the lease specifically allows the lessee six months in which to remove any improvements if the lease is cancelled after the primary term, we note that the lease is silent as to the lessee's right to remove or not remove during the term of the lease. We are of the opinion that this situation is governed by LSA-C.C. Art. 2726 which allows a lessee to remove any improvements made by him provided he leaves the thing in the state it was in when he received it.
[3] In a recent article authored by Justice Tate, 51 Tul.L.Rev. 446, he suggests that the five conditions for application of the doctrine of unjust enrichment as enunciated in Minyard, supra, should not be so rigidly applied or strictly adhered to so as to avoid the doctrine's application where recovery is justified. We have carefully reviewed the record in this case and are of the view that even if the rules for application of the doctrine as expressed in Minyard are relaxed or given a more liberal construction, the circumstances of this case do not warrant the application of the doctrine of unjust enrichment.